UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
RICHARD WANG,

       Petitioner,

  - against –

UNITED STATES OF AMERICA,

       Respondent.
------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

11-CV-3699 (AMD)

**ANN M. DONNELLY, United States District Judge:**

The petitioner, Richard Wang, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2255(a). In July 2009, the petitioner pled guilty to a single count of structuring financial transactions for purposes of evading the reporting requirements of 31 U.S.C. § 5313(a). On March 12, 2010, the Honorable Sandra L. Townes sentenced him to 57 months' imprisonment and ordered that he comply with the forfeiture order negotiated by the parties.[1] After an unsuccessful appeal, the petitioner moves to vacate, set aside, or correct his sentence, alleging ineffective assistance of counsel and challenging the forfeiture order. This case was reassigned to me on March 1, 2018. For the reasons that follow, the petition is denied.

## BACKGROUND

### I. Arrest and Indictment

In the mid-1990s, the petitioner was convicted in both federal and state court for narcotics trafficking. (CR ECF No.[2] 1 ¶ 9.) Drug Enforcement Administration agents

---

[1] The petitioner has served his sentence and is no longer under supervisory release. The forfeiture order remains in effect.

[2] "CR ECF No." refers to filings in the petitioner's underlying criminal case. *United States v. Wang*, No. 07-CR-

investigated the petitioner beginning in 2004. (CR ECF No. 1 ¶¶ 1, 9.) Among other things, they discovered that in 2006, the petitioner made over thirty cash deposits in amounts under $10,000, totaling over $250,000; the agents believed these deposits were structured to evade Section 5313's filing requirements for transactions exceeding $10,000. (*Id.* ¶¶ 14–17.) In mid-January 2007, the petitioner was arrested, (*see* CR ECF No. 2, 4), and on January 22, 2007, the petitioner was arraigned and released on a $100,000 bond (CR ECF No. 4).

Following his arrest and arraignment, a grand jury indicted the petitioner on a single count of structuring financial transactions in violation of 31 U.S.C. § 5324(a)(3). (CR ECF No. 10.) The indictment alleged that "[i]n or about and between June 2003 and October 2006," the petitioner had broken deposits "of currency in excess of $10,000 into amounts of less than $10,000" in order to evade the reporting requirements of 31 U.S.C. § 5313(a). (*Id.* ¶ 3.) The indictment also specified that the Government intended to seek forfeiture of the funds deposited into two bank accounts, as well as an additional $1.46 million. (*Id.* ¶ 5.)

On April 2, 2007, Gregory E. Cooper represented the petitioner at the arraignment on this indictment.[3] (CR ECF No. 11.)

## II. Guilty Plea

On July 13, 2009, the petitioner appeared before Magistrate Judge Robert M. Levy and pled guilty to the only count in the indictment. (CR ECF No. 50.) There was no plea agreement, but the parties agreed that the petitioner faced a maximum of 5 years' imprisonment. (CR ECF No. 51 15:4–16:1.)

During the plea proceedings, Judge Levy explained that the petitioner's punishment would "be up to the sentencing Judge who will calculate the sentencing guideline range and then

---

214 (E.D.N.Y. filed Jan. 19, 2007).

[3] Another attorney had represented the petitioner before the arraignment. (*See* CR ECF No. 3.)

make a determination whether to sentence [him] within the guidelines, above the guidelines, or below the guidelines." (CR ECF No. 51 at 17:14–20.) Judge Levy also warned that there was "no certainty as to what the guideline range will be in this case." (*Id.* at 17:22–23.) Since the parties had not yet agreed on the forfeiture amount, Judge Levy advised the petitioner of "a possible penalty of criminal forfeiture of potentially a large sum of money." (*Id.* at 16:22–17:11.)

### III. Sentencing

On March 11, 2010, the day before to sentencing, the Government filed a proposed preliminary order of forfeiture (CR ECF No. 59-2), which provided that the petitioner agreed to forfeit $750,000, as well as funds seized from two bank accounts. (*Id.* at 1–2.) In addition, it stated that the petitioner not only consented to waive his right to a jury trial with respect to forfeiture, but also waived "all constitutional, legal and equitable defenses to the forfeiture . . . , including, but not limited to, any defenses based on . . . the Eighth Amendment of the constitution (including a claim of excessive fines) . . . ." (*Id.* at 3.)

At sentencing the next day, Judge Townes accepted the petitioner's plea of guilty, finding that the petitioner had knowingly and voluntarily waived his Constitutional rights and understood the consequences of his plea. (ECF No. 6-4 at 2:20–3:6.) During the sentencing hearing, the Government clarified that the $750,000 forfeiture figure was "a negotiated amount between the [G]overnment and defense counsel," rather than an assessment of the amount involved in the structuring. (*Id.* at 13:17–20.) Judge Townes concluded that the petitioner had structured over one million dollars in deposits under $10,000, and that the guidelines range was 57 to 71 months, limited to the statutory maximum of 60 months. (*Id.* at 27:13–20.) Judge Townes determined that:

3

> The defendant has not convinced this Court to downwardly depart[]. After considering the need to reflect the seriousness of the offense, to promote respect for the law as regards this defendant and to punish him, I believe . . . that a sentence within the advisory guideline range is warranted.

(ECF No. 6-4 at 27:25–28:4.) She sentenced the petitioner to 57 months' imprisonment—the lowest sentence within the guideline range. (*Id.* at 28:9–12.) Judge Townes also ordered three years of supervised release and set various other conditions, including a requirement that the petitioner comply with the proposed preliminary forfeiture order. (*Id.* at 28:9–29:21; *see* CR ECF No. 59.)

On March 25, 2010, Judge Townes entered judgment against the petitioner, and signed the proposed preliminary order of forfeiture. (CR ECF No. 61; ECF No. 6-5.) On August 19, 2010, she signed an amended preliminary order of forfeiture, which changed the manner in which payments were to be made. (*See* CR ECF No. 69 at 3.) The amended order did not alter the provision in which the petitioner agreed to waive "all constitutional, legal and equitable defenses to the forfeiture." (*Id.* at 3–4.) On June 28, 2011, Judge Townes made the amended preliminary forfeiture order final. (ECF No. 6-6.)

## IV. Second Circuit Appeal

On March 25, 2010, the petitioner appealed his conviction, challenging his 57-month sentence on two grounds. *United States v. Wang*, 418 F. App'x 19 (2d Cir. 2011). First, he argued Judge Townes erred when she stated at one point that the guidelines range was 57 to 71 months, not 57 to 60 months. *Id.* at 21. Second, he attacked the sentence as substantively unreasonable, because his transactions were unrelated to illegal conduct, and because of his post-arrest conduct. *Id.*

In an April 8, 2011 summary order, the Second Circuit rejected both of these arguments and affirmed the conviction. *Id.* First, the Second Circuit ruled that even if Judge Townes

4

initially described the guidelines range as 57 to 71 months, she clarified that the statutory maximum was 60 months, and sentenced the petitioner to the lowest term of imprisonment available within the correct guidelines range. *Wang*, 418 F. App'x at 21. Thus, the petitioner's substantive rights were not affected. *Id.* Second, the Second Circuit ruled that the 57-month sentence was not substantively unreasonable, and that it had "no reason to disagree" with Judge Townes' determination that it would be inappropriate to downwardly depart from the guidelines range in light of the "very serious" nature of the crime. *Id.* at 22.

## DISCUSSION

Section 2255(a) permits a "prisoner in custody under sentence of a court" to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the "ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The petitioner alleges that his Constitutional rights were violated in two ways: that his retained trial counsel provided ineffective assistance of counsel, in violation of the Sixth Amendment; and that the final forfeiture order violated his Fifth Amendment right to procedural due process and the Excessive Fines Clause of the Eighth Amendment. (ECF No. 1 at 4–12.)

### I.   Ineffective Assistance of Counsel[4]

The Sixth Amendment of the United States Constitution ensures all criminal defendants have assistance of counsel; the very "purpose of the Sixth Amendment guarantee of the Assistance of Counsel . . . is to ensure that defendants have effective assistance of counsel." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (internal quotation marks and citations omitted).

A petitioner claiming that his lawyer was ineffective must meet the two-pronged test enunciated in *Strickland v. Washington*: (1) "that counsel's representation fell below an objective

---

[4] The petitioner did not raise his ineffective assistance claim on appeal, but "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

5

standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984).

To satisfy the first prong, "[a] convicted defendant . . . must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "[A] petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy." *Singleton v. Duncan*, No. 03-CV-561, 2006 WL 73734, at *14 (E.D.N.Y. Jan. 10, 2006) (citing *Jones v. Barnes*, 463 U.S. 745, 752 (1983)). Courts assessing whether counsel was ineffective "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" *Strickland*, 466 U.S. at 689, and "relief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy" *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) (citation omitted).

The second prong of the *Strickland* test is satisfied only where the petitioner can establish that there is "a probability sufficient to undermine confidence in the outcome." *Id.* "The level of prejudice the defendant need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 693). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

In this case, the petitioner argues that Mr. Cooper "failed to conduct a prompt investigation of the circumstances of the case." (ECF No. 1 at 8.) The petitioner describes Mr. Cooper's investigation as "cursory" (*id.*), but does not explain what evidence a more diligent

6

investigation would have uncovered. "Undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong." *Polanco v. United States*, No. 94-CR-453, 2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000) (collecting cases). Mr. Cooper responded by describing his investigation, which included interviewing casino personnel and reviewing the petitioner's gambling activity records. (ECF No. 5 at 3.) On this record, it cannot be said that Mr. Cooper was ineffective.

Next, the petitioner faults Mr. Cooper's decision to "seek postponement after postponement," rather than "explore an early diversion of the case." (ECF No. 1 at 8–9.) Under the highly deferential standard set forth in *Strickland*, counsel's decisions are presumed to fall within the wide range of reasonable professional assistance unless the petitioner rebuts this presumption. *Strickland*, 466 U.S. at 689. The petitioner has not done so here. Mr. Cooper made a strategic decision to postpone the proceedings reasoning that "a prolonged time frame of positive activity, coupled with the positive steps of dealing with his gambling addiction, and resolving the 'loss' to the United States Government of tax revenue would all be positive arguments to a Court." (ECF No. 5 at 3.) This was a reasonable strategy.[5]

The petitioner also claims that Mr. Cooper failed to disclose[6] that the Second Circuit reprimanded him ten months after the petitioner's guilty plea, and less than three weeks before

---

[5] Even assuming these claims are accurate that this decision fell below an objective standard of reasonableness—and it did not—there is no evidence of prejudice. There is no support for the petitioner's claim that he was offered the chance to plead guilty, and received a sentence of between 6 and 12 months. (*See* ECF No. 1 at 9.) Both the Government and Mr. Cooper deny that the Government made any such offer. (ECF No. 6 at 9; ECF No. 5 at 1.)

[6] Mr. Cooper claims that he told the petitioner about the reprimand "after it had occurred," because he wanted the petitioner to understand why Mr. Cooper could not represent him on appeal. (ECF No. 5 at 3.) There is no need to resolve this factual dispute because the petitioner has not shown that his sentence would have been any different had Mr. Cooper disclosed the sanction.

7

sentencing. (ECF No. 1 at 10.)[7] The petitioner's claim that he would not have retained Mr. Cooper had he known about the reprimand (*id.* at 10) is not convincing since the petitioner retained Mr. Cooper in 2007 (CR ECF No. 11), a full three years before the reprimand. The petitioner does not allege that he would have tried to replace Mr. Cooper before sentencing; nor does he suggest that the outcome of this case would have been different with new counsel.

The petitioner also says that Mr. Cooper did not return his calls, ignored his requests for updates, was late for court appearances, fought with the prosecutor, and put off plea negotiations. (ECF No. 1 at 10; *see id.* at 8.) There is no evidence that these acts had any effect on the plea, sentence, or forfeiture. *See Myers v. Laclair*, No. 06-CV-13321, 2007 WL 3254902, at *6 (S.D.N.Y. Oct. 31, 2007) (Ineffective counsel claim dismissed where the petitioner alleged "a lack of a response to letters and calls," but "fail[ed] to demonstrate how different conduct might have changed the outcome."); *Soltero v. Kuhlman*, No. 99-CV-10765, 2000 WL 1781657, at *5 (S.D.N.Y. Dec. 4, 2000) (Ineffective counsel claim dismissed where the petitioner alleged that "counsel did not answer his questions, did not return his phone calls, urged him to plead guilty, declined to make bail applications, and failed to provide him with requested documents" but did not establish any prejudice.).

Accordingly, the petitioner's ineffective counsel claim is denied.

## II. Forfeiture Order

The petitioner claims for the first time that the forfeiture order, to which he agreed as part of the plea, violated his Eighth Amendment and due process rights. (ECF No. 1 at 11–13.) He did not raise this claim on appeal.

---

[7] The sanction stemmed from and affected only Mr. Cooper's appellate practice. *In re Cooper*, 366 F. App'x 292, 294 (2d Cir. 2010) ("[T]he present order does not bar Cooper from CJA representation of clients in the district courts and should not be perceived as requiring, or favoring, any particular reciprocal discipline by the district courts.").

8

"[A] motion under § 2255 is not a substitute for direct appeal." *Sapia v. United States*, 433 F.3d 212, 217 (2d Cir. 2005). A claim raised for the first time in a § 2255 petition is "procedurally forfeited . . . unless [the petitioner] can show '(1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence.'" *Id.* (quoting *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998) (internal citations and quotations omitted)).

The Supreme Court has "explained clearly that 'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Cause may be demonstrated with a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by . . . officials made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (internal quotation marks omitted) (quoting *Murray*, 477 U.S. at 488). In contrast, procedural defaults that are attributed to counsel, but that do not rise to the level of ineffective assistance of counsel do not constitute "cause." *Coleman*, 501 U.S. at 753.

Because he failed to challenge the forfeiture order on appeal, the petitioner's argument is barred unless he can establish that he was actually innocent or that he had cause for not raising the issue on appeal. The petitioner does not claim actual innocence, and has identified no cause that prevented him from raising the issue earlier. The petitioner does not allege that ineffective assistance—by either Mr. Cooper or his appellate counsel, Lee Ginsberg—kept him from challenging the forfeiture order on direct appeal. *See Coleman*, 501 U.S. at 753 ("Attorney ignorance or advertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney

error.") (internal quotation marks and citation omitted). Nor does he suggest any other explanation for his failure to challenge the forfeiture order on direct appeal.

Appellate counsel's decision not to challenge the negotiated forfeiture order is understandable. It contains the petitioner's explicit agreement to waive "all constitutional, legal and equitable defenses to the forfeiture . . . , including, but not limited to, any defenses based on . . . the Eighth Amendment of the constitution (including a claim of excessive fines) . . . ." (*See* ECF No. 6-5 at 3; CR ECF No. 69 at 3.) In short, the petitioner's claim is procedurally barred, and is in any event meritless.

## CONCLUSION

For the reasons set forth above, the petitioner's motion to vacate, set aside or correct his sentencing pursuant to 28 U.S.C. § 2255(a) is denied in its entirety. I do not issue a certificate of appealability because the petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Clerk of Court is directed to close this case.

**SO ORDERED.**

                                                                       s/Ann M. Donnelly
                                                                       Ann M. Donnelly
                                                                       United States District Judge

Dated: Brooklyn, New York
       September 4, 2018